IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JACQUES G. MALLORY, #191 525,　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Mallory,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　　) CIVIL ACTION NO.: 2:12-CV-1011-WHA
　　　　　　　　　　　　　　　　　　　　)　　　　　　　　　[WO]
WARDEN GARY HETZEL, III, *et al*.,　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　　)

**<u>REPORT AND RECOMMENDATION</u>**

In this 42 U.S.C. § 1983 action, plaintiff Jacques Mallory, a state inmate, challenges the constitutionality of actions taken against him during his incarceration at the Easterling Correctional Facility, in Clio, Alabama.[1] The defendants are Warden Gary Hetzel, Classification Specialist Larry Anglin, and Correctional Officer Lorenzo Greene. Mallory alleges that on October 16, 2012, defendant Greene subjected him to excessive force in violation of his Eighth Amendment rights. Following the altercation, Mallory claims that he received a disciplinary for assault on a correctional officer as a "cover up scheme" in response to Greene's actions. Mallory seeks damages and injunctive relief.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Mallory's claims for relief. (Docs. 14, 16). The court informed Mallory that it may consider defendants' special report as a motion for summary judgment, and granted Mallory an opportunity to file a response to defendants' report; Mallory did so.

---

[1] Mallory is presently incarcerated at the Bibb Correctional Facility in Brent, Alabama.

(Docs. 18, 19). Defendants' special report is construed as a motion for summary judgment, and the matter is ripe for consideration.

For the reasons discussed below, upon consideration of the pleadings, the parties' briefs, and the evidence of record, the undersigned Magistrate Judge RECOMMENDS that the motion for summary judgment is due to be GRANTED and all claims resolved in favor of the defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Mallory to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-594 (11th Cir. 1995) (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a Mallory's sworn complaint when considering his opposition to summary judgment, and the facts pled in the complaint are treated as affidavit testimony for purposes of this recommendation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

In civil actions filed by inmates, federal courts

3

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive defendants' properly supported motion for summary judgment, Mallory must produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.

"If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own

4

conclusory allegations is not sufficient to oppose summary judgment....").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the *prima facie* case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts... . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for

trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted). Where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Mallory's *pro se* status alone does not mandate this court's disregard of the principles of production and proof in a civil case.

## II. DISCUSSION

### A. Injunctive Relief

Mallory seeks injunctive relief, requesting that immediate action be taken to secure his safety and a transfer to another facility "free of harm." (Doc. 1). However, Mallory is no longer incarcerated at Easterling. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles*

*v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Mallory is no longer incarcerated at Easterling, his request for injunctive relief is moot.

### B. Absolute Immunity

To the extent that the constitutional violations which Mallory lodges against defendants are brought against them in their official capacities, defendants are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary

damages from them in their official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### C. Eighth Amendment Excessive Force – Qualified Immunity

Regarding Mallory's excessive force claim against defendant Greene in his individual capacity, Greene argues that he is entitled to qualified immunity. The court agrees.

Qualified immunity offers complete protection for a government official from suit – provided that the official was performing discretionary functions and has been sued in his individual capacity – if the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has held that the doctrine of "[q]ualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects public officials from broad-ranging discovery disruptive to effective government, *see id.* at 818, and operates as a shield against civil damages due to mistaken judgments. *See Malley v. Briggs*, 475 U.S. 335, 343 (1986); *Butz v. Economou*, 438 U.S. 478, 507 (1978) ("[Public] officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").

The qualified immunity entitlement will fail only "if an official 'knew or reasonably should have known that the action he took within his sphere of official

responsibility would violate the constitutional rights of the [plaintiff].'" *Harlow*, 457 U.S. at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)) (emphasis removed). Qualified immunity "represents the norm" for government officials exercising discretionary authority. *Id.* at 807.

Qualified immunity is "an immunity from suit rather than a mere defense to liability... ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted). Indeed, the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987). Accordingly, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*). The qualified immunity analysis employs an "objective reasonableness standard, giving a government agent the benefit of the doubt unless h[is] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). "We generally accord ... official conduct a presumption of legitimacy." *United States Department of State v. Ray*, 502 U.S. 164, 179 (1991).

The outcome of an assertion of qualified immunity depends in large measure on whether (1) the law allegedly violated was clearly established at the time of the conduct complained about, and (2) if it was, whether the official's conduct was objectively reasonable in light of the information known to the official at the time. *See Creighton*,

483 U.S. at 641. These are both objective and fact-specific inquiries and, while the court addresses them as questions of law, *Mitchell*, 472 U.S. at 526–28 & n. 9, it does so by viewing the record through the eyes of an objective, reasonable governmental official. *Nicholson v. Georgia Department of Human Resources*, 918 F.2d 145, 147 (11th Cir. 1990). To determine whether an officer's actions were objectively reasonable, the court looks at the information known to him, viewed in the light most favorable to the plaintiff. *Swint v. City of Wadley*, 5 F.3d 1435, 1438 (11th Cir. 1993), *modified on reh'g on others grounds*, 11 F.3d 1030 (11th Cir. 1994).

Qualified immunity is a broad immunity that protects officers not only from lawful actions taken in the scope of their discretionary functions, but from certain reasonable mistakes as well; an officer is shielded from suit when he makes a reasonable mistake of law or fact. *See Pearson*, 555 U.S. at 231. *See also Messerschmidt v. Millender*, __ U.S. __, 132 S.Ct. 1235, 1244 (2012) ("[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks and citations omitted). If an officer's error is entitled to the protection of qualified immunity, such protection "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks and citations omitted). Indeed, as the Eleventh Circuit has stated, "the salient question ... is whether the state of the law [at the time of the events in question] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Holloman ex rel. Holloman v.*

*Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Once a defendant has raised the defense of qualified immunity and has shown that his actions were within the scope of discretionary authority, then the plaintiff has the burden to overcome the defense. *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988). More specifically, the Eleventh Circuit recognizes a two-part analysis for qualified immunity claims. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.*  Second, once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."  *Id.* (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)) (other citations omitted). Furthermore, there is a temporal requirement related to this inquiry – a plaintiff must show that a reasonable public officer would not have believed his actions to be lawful in light of law that was clearly established at the time of the purported violation.  *See Creighton*, 483 U.S. at 641; *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

Because "[t]he defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known[,]" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks and citations omitted), the summary judgment

requirement to "review all evidence and make all reasonable inferences in favor of the party opposing summary judgment," *Chapman*, 229 F.3d at 1023, takes on even greater force when, in a case founded upon 42 U.S.C. § 1983, a state governmental official interposes the affirmative defense of qualified immunity in a motion for summary judgment analysis.  In such cases, the court normally must answer the legal question of whether the governmental official is entitled to qualified immunity under the plaintiff's version of the facts as supported by the evidence of record when cast in a light most favorable to the plaintiff.  *See*, *e.g.*, *Saucier v. Katz*, 533 U.S. 204, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 235 (2009).

### 1. Qualified Immunity is Available to a Defendant in an Eighth Amendment Excessive Force § 1983 Lawsuit

Certain Eleventh Circuit decisions – notably, *Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002), and *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002) – have been interpreted at times as providing for a *per se* bar to qualified immunity in all § 1983 Eighth Amendment excessive force cases. However, that interpretation sweeps too broadly. *See Bowden v. Stokley*, 576 F. App'x 951, 955 (11th Cir. 2014) ("there is no *per se* rule barring qualified immunity in Eighth Amendment cases[.]"). Read in light of subsequent decisions, *Johnson* and *Skrtich* stand for the proposition that where the plaintiff establishes excessive force that was sadistically and maliciously applied by a defendant for the very purpose of causing harm – that is, where plaintiff makes the appropriate showing *on summary judgment or at trial* – there will always be a violation of the Cruel and Unusual Punishment Clause, because it is clearly established that any

infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm, and which does cause harm, violates the Constitution. *Johnson*, 280 F.3d at 1321–22; *Skrtich*, 280 F.3d at 1301;[2] *see also, e.g., Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (Noting that the subjective element required to establish an excessive force violation of the Eighth or Fourteenth Amendments is so extreme that every conceivable set of circumstances in which this occurs is clearly established to be a violation of the Constitution.) (citation omitted); *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (indicating that once a plaintiff shows an Eighth Amendment

---

[2] *Skrtich* held that

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley. See Johnson v. Breeden,* 280 F.3d 1308 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id.* The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss *or a motion for summary judgment*.

Skrtich, 280 F.3d at 1301 (emphasis added). The addition of the phrase, "or a motion for summary judgment" clouds the issue somewhat because this phrase could mistakenly be taken to suggest that there is a *per se* rule against granting qualified immunity on summary judgment, not just on a motion to dismiss, as noted *infra*. However, the Court's actual decision in *Skrtich* refutes that interpretation. As to the § 1983 excessive force claims, the district court denied the officers' motion for summary judgment on its merits and rejected the officers' qualified immunity arguments raised in that motion. *Id.* at 1300-01. The Eleventh Circuit affirmed the district court's order and found that, when viewed in a light most favorable to the plaintiff, the "evidence" before the district court – not the plaintiff's allegations – established an Eighth Amendment violation such that "no qualified immunity defense was available to the officers[.]" *Id.* at 1300-03. The Court also found no fault with the district court's undertaking a qualified immunity analysis that was independent of its analysis of the merits of the plaintiff's Eighth Amendment claims, and it affirmed the lower court's qualified immunity reasoning and decision. *Id.* at 1302-05.

Thus, it is improper to read into *Skrtich* a *per se* bar to qualified immunity on summary judgment in Eighth Amendment excessive force cases by isolating certain statements from the whole of the decision. As with *Johnson, Skrtich* reaffirmed the point of law that, when an excessive force constitutional violation is shown, the clearly established prong is *per se* satisfied.

excessive force violation, qualified immunity is unavailable because the right is clearly established as a matter of law).

However, if a plaintiff fails to demonstrate a constitutional violation – that is, if plaintiff does not present evidence which, when viewed in the light most favorable to that plaintiff, supports an Eighth Amendment excessive force claim – the officer is entitled to qualified immunity. A *per se* rule that qualified immunity is inappropriate on summary judgment where a plaintiff has not presented evidence that could sustain an Eighth Amendment excessive force claim would eviscerate the plaintiff's burden of proof to show a constitutional violation once a defendant evokes qualified immunity and turn Rule 56 on its head. *See Hope, 536 U.S. at 736,* and *Saucier, 533 U.S. at 201* (a plaintiff bears the burden to show that a constitutional violation occurred to defeat a defendant's assertion of qualified immunity); see also *Celotex*, 477 U.S. at 323-24; Fed. R. Civ. P. 56; *Skelly v. Okaloosa County Bd. of County Com'rs*, 456 F. App'x 845, 847-48 (11th Cir. 2012) (engaging in a qualified immunity analysis on Eighth and Fourteenth Amendment excessive force claims and distinguishing between a plaintiff's burden to show a constitutional violation in the first instance from the fact that, once a violation is demonstrated, the Eighth Amendment right is always clearly established); *Fennell*, 559 F.3d at 1216-17 (Granting qualified immunity where plaintiff failed to show that officer's use of force constituted excessive force in violation of the Fourteenth Amendment.).

On the other hand, qualified immunity is not available on a motion to dismiss where a plaintiff alleges that a defendant used excessive force in violation of the Eighth Amendment. This is so because, on such a motion, the court must accept as true all well-

pleaded factual allegations. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Thus, the plaintiff's burden of proof in a case in which qualified immunity is at issue is dependent on what type of motion is before the court.

As discussed above, this matter is before the court on a motion for summary judgment. Accordingly, where evidence is considered by the court, it is construed in the light most favorable to the plaintiff; nevertheless, that evidence must support an Eighth Amendment excessive force claim in order to avoid qualified immunity.

### 2.     Summary Judgment Facts for Qualified Immunity Purposes

### a.     Material Facts[3]

On October 16, 2012, Defendant Greene directed plaintiff to report to his assigned dorm. (Doc. 14-2 at 1, 3).  Plaintiff testifies that Greene instructed him to "get away from that door [in E-1 of E-Dorm]; I repl[ied] by saying that I am not in front of the door, and I am not in an unauthorized area of the dorm." (Doc. 1 at 5). According to plaintiff, Greene told him to stay where he was, and plaintiff agreed to do so. (Doc. 1 at 5). Defendant Greene then ordered plaintiff to produce his identification card.  (Doc. 1 at 5; Doc. 14-2 at 1, 3).  Plaintiff challenged Greene's directive by asking, "Why do you want my I.D.?" (Doc. 1 at 5). Greene replied by asking plaintiff to "just come on in the lobby" of E-Dorm, and plaintiff complied.  (*Id.*).

---

[3] These are the facts for summary judgment purposes only. They may or may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted).

Once inside the lobby, Greene ordered plaintiff to place his hands on the wall. (*Id.*). Plaintiff for the second time rejected one of Greene's commands with the question, "Why?" (*Id.*). At this point, Greene removed his "duty belt," placed it on a table, and said "buck buck!"[4] (*Id.*). After plaintiff questioned Greene's command to stand against the wall, Greene "grabbed" plaintiff's arm. (*Id.*). Plaintiff resisted Greene by pulling away from Greene's grasp and "told him not to put his hands on me." (Doc. 1 at 6).

A brawl ensued as Greene attempted to subdue the plaintiff and plaintiff physically resisted. Greene grasped plaintiff's waist, threw him onto a table, and "jumped on top" of plaintiff. (*Id.*). Plaintiff struggled, and pushed Greene to the other side of the table. Greene maintained a grip on plaintiff's person, and he began punching the plaintiff "from the bottom." (*Id.*). Plaintiff testifies that he began to "defend" himself. (*Id.*). Witnesses testify that plaintiff "started swinging," and at some point plaintiff was on top of Greene, punching him in the face. (Doc. # 14-2 at 1; Doc. # 14-3, 14-4, 14-5, 14-7, 14-8, 14-9). The two men "were wrestling on the floor"; neither man maintained the upper hand for long. (Doc. 1, 5, 14-2 at 1, 3).

At some point when Greene had "overpowered" plaintiff, and gotten on top of plaintiff and punched him about the face, at least three corrections officers entered the room and attempted to pull the men apart. (Doc. 1 at 6). Plaintiff resisted those officers' attempts to place him in handcuffs; he testifies that he did so because Greene continued

---

[4] Plaintiff argues that, by those actions, Greene adopted an aggressive posture which plaintiff perceived as threatening or physically intimidating. (Doc. 19). The parties dispute whether Greene removed his belt or said "buck buck." However, assuming that both events occurred, plaintiff has not explained why Greene's actions are unusual and did not represent Greene's attempt to cause plaintiff to comply with Greene's directive that plaintiff place his hands on a wall.

"attacking me by punching and kicking me." (Doc. 1 at 6; Doc. 14-2 at 1, 3). Officer Calhoun sprayed plaintiff with a "one second burst of Sabre Red Chemical Agent" (Doc. 14-2 at 1, 3), and an officer identified by plaintiff as "Sgt. Jones" restrained Greene and said, "Greene, what are you doing, man?"  (Doc. 1 at 6).

The men were separated, and three corrections officers placed plaintiff on the floor and endeavored to handcuff him. (Doc. 14-4 at 1). According the uncontroverted testimony of one of those officers – Officer Rodney Johnson – plaintiff "tried to break free and go after Officer Greene again." (Doc. 14-4 at 1). Once plaintiff was handcuffed and subdued, Greene did not use any additional force.[5]  (Doc. 1; Doc. 5; Doc. 14-2 at 3). According to plaintiff's affidavit testimony, he stopped resisting the officers' attempts to place him in handcuffs only after Greene was physically restrained by his fellow officer. (Doc. 1 at 6).

The officers who had subdued and handcuffed the plaintiff escorted him to the infirmary, where his condition was evaluated by a nurse. Plaintiff was treated for

---

[5] There is disputed evidence that, viewed in a light most favorable to the plaintiff, Greene "*attempted* to kick and hit [plaintiff after he] was restrained and his aggression had stopped." (Doc. 14-2 at 28) (emphasis added). Greene was restrained by a fellow officer at that time, and he did not *actually* kick or hit or otherwise make contact with plaintiff after the plaintiff was subdued and restrained in handcuffs. There is no evidence that Greene used force on plaintiff after plaintiff was restrained. *See Watson v. Edelen*, 76 F.Supp.3d 1332, 1371 (N.D. Fla. 2015) ("[A] gratuitous use of force on a handcuffed, shackled, and physically compliant prisoner constitutes a violation of the Eighth Amendment's prohibition on the use of excessive force."). Greene's alleged attempts to use force on the plaintiff while he was subdued and handcuffed is not the same as the use of force. For purposes of the Eighth Amendment, "force" is understood to require "physical force."  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners.") (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010) (same).
     Moreover, based on the facts of this case, Greene's attempt to kick plaintiff while the latter was handcuffed and prostrate does not give rise to a jury question as to whether Greene acted with malice or sadistically *prior to* the attempted kick.

exposure to the chemical agent and released. He sustained "knots" and bruises, but no open wounds. (*Id.*). None of his injuries was noted in the infirmary's medical records. (*Id.*).

### b.      Sham Affidavit

In order to rule on Greene's assertion of qualified immunity, the court must first resolve an evidentiary issue created by plaintiff. Prior to responding to defendants' special report, plaintiff submitted two affidavits in which he provided consistent substantive testimony regarding the material events supporting his Eighth Amendment excessive force claim against Greene. (Doc. 1, 5). That testimony is summarized above. Plaintiff's consistent testimony in the two affidavits at issue is sufficient for the court to afford plaintiff's version of events credence for summary judgment purposes; in addition, other evidence of record is also consistent with the testimony contained in plaintiff's two affidavits. (*See e.g.*, Docs. 1, 5, 14-3, 14-4, 14-5, 14-6, 14-7, 14-8). Based solely on this evidentiary record, the court would conclude that there are no material facts in dispute as to plaintiff's Eighth Amendment excessive force claim.

However, plaintiff also filed a third affidavit in opposition to defendants' special report that differs materially and substantively from his testimony in his prior affidavits. (Doc. 19; *cf.* Doc. 1, 5). The third affidavit creates a dispute of material fact that, if considered by the court, would preclude summary judgment. Plaintiff offers no explanation for the irreconcilable differences that appear when one compares his third affidavit with his prior two affidavits.

As discussed above, in his first two affidavits, plaintiff testifies that he was handcuffed and subdued only after several officers arrived on the scene of his physical altercation with Greene, and after an officer sprayed a chemical agent into plaintiff's face. (Doc. 1 at 6; Doc. 5 at 4). Plaintiff testified that he and Greene were physically separated before he relented and permitted officers to place him in handcuffs. (*Id.*). This version of events corresponds with the testimony of Officer Rodney Johnson (Doc. 14-4 at 1), Officer Kevin Calhoun (Doc. 14-5 at 1), Correctional Sergeant Lester Grimsley (Doc. 14-7 at 1), and Correctional Sergeant Dominic Jones (Doc. 14-8). In other words, before plaintiff filed his third affidavit in response to the defendants' special report, the plaintiff's first two affidavits, as well as the affidavits of four eye witnesses, provide undisputed evidence that plaintiff was placed in handcuffs by officers other than Greene after he and Greene were separated from one another.

In the plaintiff's third affidavit, however, plaintiff testifies that Greene placed him in handcuffs while the two men were alone, then called for assistance and "continued to punch and knee the Plaintiff while he was in handcuffs on the floor faced down, until [Sergeant Grimsley and Sergeant Jones arrived and they] grabbed [Greene] off of the Plaintiff and placed [Greene] against the lobby wall." (Doc. 19 at 3, citing Pl. Ex. 1, 2 and 5). In his opposition to summary judgment on the Eighth Amendment excessive force claim against Greene, plaintiff raises for the first time the legal argument that a prison officer who beats a handcuffed and subdued prisoner commits an Eighth Amendment violation. (Doc. 19). Clearly, plaintiff's third affidavit is calculated to defeat summary judgment on his excessive force claim, and it ignores the fact that plaintiff's new version

of events conflicts irreconcilably with his own prior sworn testimony, which he voluntarily filed into the court's record on two occasions.

District courts "shall consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record ... demonstrates that no genuine issue of material fact exists." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986) (internal quotation marks omitted). However, there is an exception to that mandate when a party tries to escape summary judgment by using an affidavit to create an issue of fact where none existed. Under that circumstance, the court is vested with the discretion to disregard such an affidavit as a "sham" if it contradicts prior, clear testimony without explanation. *Van T. Junkins and Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984). Under the "sham affidavit" doctrine, when a party gives clear testimony that negates the existence of any dispute of material fact, "that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.*

Recognizing that "[e]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence," and that the court must distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence[,]" this court nevertheless concludes that plaintiff's third affidavit provides a wholly different version of material events, plaintiff does not explain why there are material differences, and his testimony in the third affidavit is irreconcilable with his previous affidavit testimony.

*Tippens*, 805 F.2d at 953-54 (internal quotation marks omitted). Plaintiff clearly testifies in his first affidavit that he was handcuffed by officers other than Greene and that Greene did not use any force upon the plaintiff after he was placed in handcuffs.  (Doc. 1 at 5-6). Plaintiff repeats this testimony in his second affidavit. (Doc. 5). The court need not make any inferential leap to understand plaintiff's sworn testimony on those points; therefore, there is no need for a jury to make a determination of fact. Plaintiff's third affidavit is equally clear, and it is in direct conflict with plaintiff's prior testimony. Again, this is not a circumstance where plaintiff's credibility is at issue because of conflicting affidavit testimony such that a jury is needed to make a credibility determination and factual findings.

After careful consideration, the court concludes that plaintiff's third affidavit testimony (Doc. 19) is due to be stricken as a sham. It will not be considered on summary judgment.

### 3.   Discretionary Authority

In the present case, it is undisputed that Defendant Greene acted within the scope of his discretionary authority during the events that form the basis of plaintiff's complaint, and the court so finds. Accordingly, the burden shifts to the plaintiff to show that Greene violated his constitutional right to be free from excessive force and, if plaintiff demonstrates an Eighth Amendment violation, that the right was clearly established at the time of the violation. *See Cottone*, 326 F.3d at 1358 ("Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.").

### 4.     Constitutional Violation

Once the burden shifts to the plaintiff, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations [or, if qualified immunity is asserted at summary judgment, the evidence construed in a light most favorable to the plaintiff], if true, establish a constitutional violation." *Hope*, 536 at 736; *see also Saucier*, 533 U.S. 194.  In the present case, Mallory cannot meet his burden to show that Greene violated his right to be free from excessive force under the Eighth Amendment.

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The Eleventh Circuit summarizes the relevant legal framework for an Eighth Amendment excessive force claim as follows:

> In … Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)) (establishing the standard for an Eighth Amendment excessive force claim)[.] If force is used "maliciously and sadistically for the very purpose of causing harm," then it necessarily shocks the conscience. *See Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987) (stating that the Eighth and Fourteenth Amendments give equivalent protections against excessive force). If not, then it does not.
>
> Under this standard, we look at "the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner." *Id.* (citing *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085). Additionally, we consider "the

extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085. Not only that, but we must also give a "wide range of deference to prison officials acting to preserve discipline and security," including when considering "[d]ecisions made at the scene of a disturbance." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir.1990).

*Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (citations to Fourteenth Amendment cases omitted). "From consideration of such factors, 'inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Whitley*, 475 U.S. at 321 (quoting *Johnson Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Skrtich*, 280 F.3d at 1300-1301.

The standard applied to an Eighth Amendment excessive force claim contains both an objective and a subjective component. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Regarding the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* (internal quotations omitted).

Not every malevolent touch by a prison official amounts to a deprivation of constitutional rights. *See id.* at 9. Summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy. *Whitley*, 475 U.S. at 312. In extending *Whitley* to all cases involving allegations of force, the *Hudson* Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

503 U.S. at 6 (citations omitted).

While the severity of a plaintiff's injuries is a factor for the court to consider, an excessive force claim cannot be dismissed on the basis that the plaintiff sustained minimal or no injuries. The *Hudson* Court clarified that the extent of the injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one – "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 556 U.S. 34, 38 (2010); *see also Hall v. Bennett*, 447 F. App'x 921, 923-24 (11th Cir. 2011) (*per curiam*) (citing *Wilkins*, 559 U.S. at 37-38) ("[W]hile [plaintiff] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury.").  Recognizing that the relief in such a case could be minimal, the Court added that "even if [the inmate] succeeds, the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Wilkins*, 559 U.S. at 40.

The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (internal quotations omitted).

Plaintiff has failed to demonstrate an Eighth Amendment violation under the undisputed facts of this case. A prison guard is permitted to use force to maintain order, and the use of force during a verbal altercation between prisoner and guard can fall within the scope of maintaining order. *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). In *Bennett*, a case involving more severe force than the instant action and significantly greater injury to the prisoner, the Court found that the fact that Bennett created a disturbance justified the amount of force used by the defendant officers. After complying with a prison guard's order to clean his cell, Bennett questioned the guard's decision to deny Bennett permission to visit the prison gymnasium. *Id.* at 1531. Two guards were present, and one took issue with Bennett's query. He ordered Bennett to exit his cell, and Bennett complied. The guard grabbed Bennett by the throat, shouted obscenities and racial slurs, and told Bennett he was under no obligation to allow gym access.

Bennett demanded that the guard release his grip, and Bennett struggled against the guard. Once Bennett began to struggle, the second guard pushed Bennett against the cell bars, while the other guard, who had a grip on Bennet's throat, "hit Bennett with a nightstick on the left side of his head, near the eye." *Id.* at 1532. The Eleventh Circuit determined that the force used was not excessive, but "was appropriate based on the prison's security interests in maintaining order and the minimal injuries Bennett sustained." *Id.* at 1535.

25

Similarly, in *Brown*, 813 F.2d at 1189, the force used by guards was deemed justified where a verbal altercation occurred between Brown and prison guards, which was followed by Brown's refusal to enter his cell. A guard grabbed Brown's arm in an attempt to lead Brown into his cell; that precipitated a "confrontation" between prisoner and guard which resulted in a guard's placing a "riot baton" against Brown's neck "with some degree of force" and other officers assisting that guard to force Brown into his cell. *Id.* at 1189. The Eleventh Circuit held that the use and severity of force "was justified under the circumstances, and that the force was used for a legitimate security purpose[.]" *Id.*

In the present case, plaintiff refused Greene's directive to produce his prison identification card, and questioned Greene's reasons for the command. A prisoner's failure to comply with an officer's order permits the officer to use some measure of force to gain the prisoner's compliance or to respond to a threat that arises because of the prisoner's failure to comply. *See, e.g., Danley v. Allen*, 540 F.3d 1298, 1308 (11th Cir. 2008) ("Danley created a disturbance by failing to obey orders, and the jailers' initial use of pepper spray was a reasonable response to that threat."). Greene also ordered plaintiff to place his hands on a prison wall. Plaintiff refused; Greene then used a reasonable and minimal level of force – i.e., grabbing plaintiff's arm – to cause plaintiff comply. *See Brown*, 813 F.2d at 1189 (grabbing a prisoner's arm to force compliance was not excessive force). It is undisputed that plaintiff verbally and physically resisted once Greene grabbed plaintiff's arm. Greene escalated his use of force after plaintiff resisted; he forced plaintiff onto a table and straddled plaintiff's body. Plaintiff fought back, at

which point it would have been reasonable for Greene to fear for his personal safety, particularly in light of plaintiff's continued and escalating resistance to Greene's authority, commands, and forceful attempts to subdue the plaintiff.  It was only after the two men were separated by other guards that plaintiff was subdued and placed in handcuffs.

The evidence of record, taken in the light most favorable to plaintiff, reveals a situation in which Greene used a constitutionally permissible amount of force to maintain order, safeguard prison security, and protect himself from the plaintiff. There is no evidence from which a reasonable juror could conclude that Greene acted maliciously or sadistically. There is a "wide range of deference [given] to prison officials acting to preserve discipline and security." *Bennett*, 898 F.2d at 1533. "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." *McReynolds v. Ala. Dept. of Youth Services*, No. 2:04-cv-850-MEF, 2008 WL 1927373, *3 (M.D. Ala. Apr. 29, 2008) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Skrtich*, 280 F.3d at 1300). Greene acted within his allotted range of deference in this case and, on the evidence presently before the court, there can be no other conclusion than that Greene's use of force was necessary to restore discipline, combat a physical threat from the plaintiff, and maintain prison security.

Thus, plaintiff fails in meeting his burden to show a constitutional violation, and Greene is therefore entitled to qualified immunity. *See Fennell*, 559 F.3d at 1216-17.  The

motion for summary judgment is due to be granted as to the individual capacity claims against Greene.

### D.  Due Process

Mallory maintains that defendant Greene issued him a false disciplinary charge to "shield" the guard's unwarranted use of force. Mallory also complains that defendant Hetzel violated his right to due process by approving the hearing officer's guilty finding on the charged violation and the sanctions imposed.  (Doc. 1, 5).

Defendants' evidence reflects that on October 16, 2012, Defendant Greene issued Mallory a disciplinary for a violation of Rule #29 – "Assault on an ALDOC Official." Following a hearing on the disciplinary charge, the hearing officer found Mallory guilty as charged in the disciplinary report and sanctioned him with 45 days' disciplinary segregation and 60 days' loss of all privileges, which included 15 days in the Restricted Privileges Dorm after serving the 45 days of segregation time. The record indicates that it was Warden Sconyers, not Hetzel, who approved the disciplinary but reduced sanctions to 45 days' segregation and 45 days' loss of all privileges on October 30, 2012. The disciplinary report also reflects that Mallory was provided advance, written notice of the charges against him, an opportunity to call witnesses and present documentary evidence in his own behalf, and a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action (Doc. 25, Exh. 4 at 2-3). S*ee Wolff v. McDonnell*, 418 U.S. 539 (1974); *see also Superintendent v. Hill*, 472 U.S. 445 (1985) (at a prison disciplinary hearing, the requirements of due process are satisfied if "some evidence" supports the decision of the disciplinary hearing officer).

An allegation that an inmate has been wrongly reported or punished for conduct which he did not commit does not, without more, assert a valid claim of the denial of due process. *See Collins v. King*, 743 F.2d 248 (5th Cir. 1984). Thus, Mallory's claim regarding the allegedly false disciplinary report lacks merit. Further, defendants do not admit that the information contained in either the incident reports or the disciplinary report regarding the October 16, 2012, incident is false. While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982). In *Slocum*, the Court held that prisoners state no due process claim by merely asserting that erroneous information may exist in their prison files.  Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Mallory merely asserts that Defendants based disciplinary action from the October 16, 2012, incident on false information, which entitles him to no relief.

The Supreme Court has also held that prison regulations on confinement of inmates create no liberty interest enforceable in a § 1983 action. *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Court determined that the added restraint of prison discipline "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id*. at 486. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does

not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Here, Mallory does not demonstrate that the temporary assignment to segregation and loss of privileges because of the misconduct charge subjected him to "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Because Mallory has not alleged deprivation of a protected liberty interest, he fails to state a due process claim based upon the alleged false charge. *See id*. at 487; *see also Collins*, 743 F.2d at 253–54 ("[i]f the disciplinary proceeding was otherwise fair and adequate, the opportunity that it afforded [Mallory] to clear himself of misdeeds which he did not commit sufficed."). Defendants are entitled to summary judgment on Mallory's Fourteenth Amendment due process claim.

### E. Classification

To the extent that Mallory challenges the defendants' actions regarding a change to his security classification level, he is entitled to no relief. Because of the seriousness of the disciplinary Mallory received for violating Rule #29 – Assault on a ALDOC Official – Defendant Anglin recommended to the Central Review Board that Mallory's classification level be increased. After plaintiff received notice of a pending re-classification, a due process hearing was held November 26, 2012. On December 14, 2012, the Central Review Board approved the recommendation to increase Mallory's security classification from level four to level five. (Doc. 14, Exh. K, L).

The prison officials' decision to recommend Mallory for a custody increase based on his disciplinary for violating Rule #29 does not mark a "dramatic departure from the

basic conditions" of his sentence. *Sandin*, 515 U.S. at 485. As an inmate confined in the Alabama prison system, Mallory has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Because Mallory has no constitutionally protected interest in the level of his custody classification, correctional officials may assign him to any classification level without implicating the protections of due process. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (Constitution itself confers no right upon an inmate to any particular custody or security classification.); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Thus, Defendants are entitled to summary judgment on the classification decision challenged by Mallory.

### F. Conditions

Mallory alleges that he was subjected to an unsafe and hazardous living condition because he remained housed at Easterling following the incident with Defendant Greene and because he was placed in segregation "for an act he did not do." (Doc. 1). The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). There is no "static test" for determining which conditions violate the Constitution. *Id*. at 346. To prevail on an Eighth Amendment conditions of confinement claim, a prisoner must show he faced a sufficiently serious risk to his health or safety and that the defendant official

acted with "deliberate indifference" to such risk. *See Farmer v. Brennan*, 511 U.S. 825

834 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993).

Here, Mallory alleges in conclusory terms that he was subjected to a hazardous

and unsafe condition of confinement when he remained at Easterling in the segregation

unit following the altercation with Defendant Greene. Mallory, however, fails to

demonstrate how the conditions about which he complains subjected him to a substantial

risk of serious harm, much less that defendants were deliberately indifferent to that risk.

Defendants' evidence reflects that following the incident between Mallory and Defendant

Greene, the guard was assigned duties outside the institution on October 16, 2012, an

assignment to remain in effect until rescinded by the Warden. Mallory's assignment to

segregation and Defendant Greene's duty assignment on the outside of the institution

prevented the possibility of their having any contact. Additionally, following the Central

Review Board's December 14, 2012, decision to approve Defendant Anglin's

recommendation that Mallory be reclassified to a level five facility, he was transferred to

the St. Clair Correctional Facility on February 7, 2013.[6]  (Doc. 14, Exhs. K, L). The mere

fact that the condition described by Mallory existed is insufficient to demonstrate a

constitutional violation. Consequently, Defendants' motion for summary judgment on

Mallory's conditions of confinement claim is due to be granted.

### G. The Investigation Claim

---

[6] Mallory was originally slated to be transferred to the St. Clair Correctional Facility on January 10, 2013, but the transfer was rescheduled after prison officials were notified on January 9, 2013, that he was scheduled for a court appearance in Baldwin County, Alabama.  (Doc. 14-11, 14-12).

To the extent that Mallory complains that Defendant Hetzel violated his right to due process by failing to investigate a complaint he sent the warden regarding the incident with Defendant Greene, this claim entitles Mallory to no relief. "It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *See Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  Here, Mallory's claim that Defendant Hetzel violated his due process rights by failing to investigate his complaint of assault by Defendant Greene implicates no constitutional right to which he is entitled. Failing to investigate an inmate's complaint properly does not rise to the level of a separate constitutional violation. *See generally Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (finding there is no constitutional right to an investigation of an excessive force claim). Inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). Defendants are entitled to summary judgment on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Plaintiff's request for injunctive relief (Doc. 1) be DENIED as moot,

2.      Plaintiff's third affidavit (Doc. 19) be stricken as a sham affidavit,

3.      Defendants' motion for summary judgment (Doc. 14) be GRANTED, and

4.      Final judgment be entered in favor of defendants on all of plaintiff's claims, and this case closed.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties. The parties may file any objections to this Recommendation on or before **September 9, 2016**. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 26th day of August, 2016.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge

34